IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

SHARON LEIGH LOVE                                                                                         PLAINTIFF

V.                                                                        CAUSE NO.: 2:10CV176-SA-JMV

BAPTIST MEMORIAL HOSPITAL –
NORTH MISSISSIPPI, INC.                                                                            DEFENDANT

MEMORANDUM OPINION

Defendant has moved for summary judgment of Plaintiff's claims brought pursuant to the Americans with Disabilities Act (ADA). Because Plaintiff has failed to establish that she was regarded as disabled or that she was terminated in retaliation for opposing an illegal practice, Defendant's motion [54] is GRANTED.

*Factual and Procedural Background*

Plaintiff worked at Baptist Memorial Hospital – North Mississippi ("Baptist") as a registered nurse since 2002. In October of 2008, Plaintiff fell asleep while at work. Several weeks later, she fell asleep again during her shift at Baptist. After the second episode, Plaintiff contends that another nurse, Cynthia Freeland, commented that "if it wasn't about drugs, then I don't know what it was." Plaintiff claims that Freeland's comment made the other nurses think that Plaintiff was a drug addict. She claims that after Freeland's statement, other nurses made comments about drug use and narcotics to her, checked her pockets for narcotics, and warned her about using drugs while on the job. Plaintiff contends that her fatigue was because of her hypothyroidism and (yet to be diagnosed) sleep apnea.

In January of 2009, Plaintiff suffered a knee injury while attempting to move a larger patient at work. According to her physician, Dr. Boyd, Plaintiff suffered a partially torn right median meniscus. Plaintiff was placed on sedentary duty, and eventually prescribed crutches to

help her get around. Instead of crutches, Plaintiff asked Dr. Boyd to prescribe her a wheelchair which she used at work. Plaintiff contends that her supervisors were upset with Plaintiff's use of the wheelchair and assigned Plaintiff duties that she would not like in order to keep her away from patients. Plaintiff was released to full duty with no restrictions or limitations on her movements on March 10, 2009.

On April 24, 2009, Plaintiff sent an email to Randy White, the Director of Inpatient Services at Baptist, that she was "so frustrated I'm thinking of notifying the EEOC." Plaintiff asserted that Randy White and Cindi Tutor, the ICU/ICU step down manager and Plaintiff's supervisor, were picking on her personally and felt that White was just "waiting for even the smallest thing to have [Plaintiff] fired!!" Between March 13 and October 22, 2009, five emails were sent to Cindi Tutor from other nurses regarding indiscretions allegedly committed by Plaintiff. The majority of those emails concerned the possible mismanagement of narcotics dosages and medicinal waste.

Richard Hopper, a charge nurse on the weekend night shift, ran a reconciliation report in November of 2009, which, according to him, showed discrepancies between narcotics disbursement and Plaintiff's record-keeping. According to Hopper, he was unable to account for all the narcotics dispensed by Plaintiff when compared to the patients' charts for her shift. Plaintiff was suspended for three days for an investigation. Cindi Tutor ran other computerized record-keeping programs and determined that during a sixteen day time period from October 15, 2009 through October 31, 2009, Sharon Love "failed to properly document and account for narcotics that she signed out from the medication dispensing system at least eighteen times." As admitted by the Plaintiff, proper documentation of narcotics signed out from the medication dispensing system is mandatory for RNs at Baptist, and the proper documentation and

accounting of narcotics is a requirement for that job. According to Cindi Tutor, failure to properly document and account for narcotics is a terminable offense. A four person team reviewed the investigation and recommended that Sharon Love be terminated for "[u]naccountability of narcotics."

Plaintiff contends Defendant regarded her as having the disability of a drug addiction because her sleep apnea and thyroid problems caused her to sleep at work. She also claims she was regarded as disabled because of her knee injury. Plaintiff further alleges she was retaliated against for exercising her rights under the ADA to report instances of illegal discrimination to the EEOC. In response, Defendant filed the instant motion for summary judgment.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but

only when . . . both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002); <u>SEC v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1997); <u>Little</u>, 37 F.3d at 1075.

*Discussion and Analysis*

*I.      Disability Discrimination*

The ADA prohibits discrimination against "a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff may bring an ADA claim based either on direct evidence of discrimination, or in the alternative, through indirect, circumstantial evidence of discrimination. <u>Daigle v. Liberty Life Ins. Co.</u>, 70 F.3d 394, 396 (5th Cir. 1995). When the plaintiff's claim is based on circumstantial evidence of discrimination, we apply the <u>McDonnell Douglas</u> burden-shifting framework. See <u>McInnis v. Alamo Cmty. Coll. Dist.</u>, 207 F.3d 276, 279 (5th Cir. 2000); <u>accord</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). To prevail on her ADA claim, Plaintiff must establish that 1) she has a disability; 2) she is qualified for the position in which she was employed; and 3) she was discriminated against because of her disability. <u>Griffin v. UPS</u>, 661 F.3d 216, 222 (5th Cir. 2011); <u>Jenkins v. Cleco Power, LLC</u>, 487 F.3d 309, 315 (5th Cir. 2007).

"An individual has a disability under the [ADA] if he or she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment, or (3) is regarded as having such impairment." Stewart v. City of Houston Police Dep't., 372 F. App'x 475, 477 (5th Cir. 2010) (citations and internal footnotes omitted); Atkins v. Salazar, 677 F.3d 667, 675 (5th Cir. 2011) (citations omitted). Plaintiff contends that she was "regarded as" disabled by Baptist because she used a wheelchair when recovering from her knee injury in February, and because she was perceived as being a drug addict.

The ADA's definition of "disability" was substantially broadened by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), effective January 1, 2009. "The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1 (2011). For "regarded as" claims, an individual is no longer required to demonstrate that the disability she is regarded as having is an actual qualified disability under the ADA or that it substantially limits a major life activity. See 42 U.S.C. §§ 12102(1)(C), (3). Under the ADAAA, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id.

　　A. Knee Injury

Plaintiff contends that Baptist regarded her as disabled because she used a wheelchair when she was confined to sedentary duty by her treating physician for her knee injury. Because Plaintiff was not allowed to continue her duties as an ICU nurse or take leave for the duration of her recovery, Plaintiff contends Baptist discriminated against her under the ADA. Plaintiff admits that the knee injury itself does not constitute a "disability" under the ADA. Moreover, the

only action Plaintiff contends she was subjected to because of the alleged perception that she was disabled was an alteration to her work duties. The Court has liberally construed Plaintiff's claims to be a complaint that Baptist did not reasonably accommodate her while her knee was injured.[1]

Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." Chevron Phillips Chem. Co., 570 F.3d at 621. The Fifth Circuit has recognized that "'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" Id. (quoting Taylor v. Principal Fin. Grp., 93 F.3d 155, 165 (5th Cir. 1996)). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." E.E.O.C. v. Agro Distrib., 555 F.3d 462, 471 (5th Cir. 2009).

Here, Plaintiff injured her knee while moving a patient but did not inform Baptist until several days later. She visited her chosen physician who prescribed her to sedentary work only with the aid of crutches. Despite her doctor releasing her back to work on February 4, 2009, Plaintiff indicated that she would rather stay at home during her recuperation. Plaintiff met with

---

[1] Otherwise, Plaintiff would not be able to satisfy the first prong of the prima facie case that she was "disabled." See EEOC v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 619 (5th Cir. 2009) ("temporary, non-chronic impairments of short duration, with little or no permanent impact, are usually not disabilities.").

her supervisor on February 6, 2009, and together, they developed a "Transitional Employment Plan," which indicated that until her doctor released her to full duty, she was to engage in sedentary duty including chart checks, secretarial duties on the first floor, and assist the employee health nurse. Plaintiff contends that Katie Morrissette, the Chief Nursing Officer, disapproved of Plaintiff's use of a wheelchair at work because of "patient perception," and kept Plaintiff away from patients while the wheelchair was in use. Plaintiff insists that she could have talked to patients' families, completed admission paperwork, put in physician orders, and taken off orders on the chart instead of performing duties in the medical records department.

"The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." Id. "The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." Jenkins, 487 F.3d at 315. "A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." Id. at 316. Because Plaintiff was given a reasonable accommodation for her knee injury and pursuant to her doctor's restrictions, her claim of disability discrimination fails.

B. Drug Addiction

Plaintiff contends that she was regarded as having a drug addiction by Baptist because she fell asleep at work twice in October of 2008, and another nurse may have commented that "if it's not drugs, then I don't know what it was." Plaintiff claims that after the incidences where she fell asleep, other nurses were "snooping around" her, feeling her pockets, and checking her narcotics records.

As far as Plaintiff's claims that actions were taken because of her perceived drug use, the Court finds such allegations to be unfounded in the record. There is no indication in the record

7

that Plaintiff's supervisors suspected that Love had a drug problem. Indeed, Baptist did not test Plaintiff for drug use after her initial screening for hire. As noted above, conclusory allegations and speculation are not enough to create a genuine dispute of material fact. As such, Plaintiff's claim for disability discrimination because of the alleged perception of drug addiction is dismissed.

Plaintiff's claims for discrimination fail as a matter of law because Baptist did not regard her as disabled. Even assuming *arguendo* that Plaintiff had established a prima facie case, she has failed to present any evidence that her treatment was either a pretext for or motivated by discrimination.

## II. Retaliation – Opposition

The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). The familiar burden-shifting McDonnell Douglas framework applies in unlawful retaliation cases. See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998). To make a prima facie case of retaliation under the ADA, Plaintiff must demonstrate that: (1) she engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action. St. John v. Sirius Solutions, LLLP, 299 F. App'x 308 (5th Cir. 2008); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007).

To engage in protected activity - here "oppos[ing] any act or practice made unlawful by [the ADA]" - Plaintiff must show that she had a "reasonable belief that the employer was engaged in unlawful employment practices." Turner, 476 F.3d at 348. As evidence of her

8

reasonable belief that Baptist engaged in unlawful employment practice, Plaintiff relies on an email she sent on April 24, 2009, to Randy White that stated the following:

> I was just told of a conversation between Cindi and yourself . . Cindi stating over the phone "We've GOT HER NOW" . . That is very disturbing to me as you told me that "I was not being picked on personally". I'm so frustrated I'm thinking of notifying the EEOC . . I feel I need someone to protect me!!!
> . . .
> I have done nothing to deserve this micromanagement treatment. You all just waiting for even the smallest thing to have me fired!! Sharon

This email does not constitute protected activity because Plaintiff could not have reasonably believed that Cindi Tutor's "micromanagement" constituted an unlawful employment practice under the ADA. See Turner, 476 F.3d at 348 (plaintiff's request to supervisor not to use "ghetto children" remark and asking supervisor not to make reference to plaintiff's race, followed by email complaining about deteriorating work relationship with supervisor, with no reference to discriminatory conduct, was objectively unreasonable and did not constitute protected activity). The email does not demonstrate that Sharon Love was opposing what she reasonably believed was an unlawful practice under the ADA. The email never mentions a medical condition and does not complain of discrimination based on her condition. She merely complains of micromanagement, which is not protected under the ADA. It was not reasonable for Plaintiff to believe the email opposed an employment practice made unlawful by the ADA, and thus the email was not protected activity. Plaintiff fails to make a prima facie showing of unlawful retaliation.

Moreover, Plaintiff is unable to establish a "causal link" between the protected activity and the adverse employment action. Plaintiff's discharge occurred almost eight months after the email was sent to Randy White. The temporal proximity, without more, is too tenuous to establish the causal connection necessary to establish an ADA retaliation prima facie case. See

9

Roberts v. Unitrin Specialty Lines Ins. Co., 405 F. App'x 874, 879-80 (5th Cir. 2010) (finding that an eight month span between the alleged protected activity and termination "negate[s] any argument that a causal connection existed between the activities and the termination.").

*Conclusion*

Plaintiff failed to establish a genuine dispute of material fact as to whether Baptist discriminated against her because of a perceived disability – either from her knee injury or a supposed drug addiction. Moreover, Plaintiff failed to overcome her burden to prove prima facie ADA retaliation. Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's case is DISMISSED.

SO ORDERED, this the 25th day of September, 2012.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**